UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARIE UBALDINI,** | : |
| | : |
| Plaintiff, | : |
| | : CIVIL ACTION NO. 20-cv-4356-RAL |
| v. | : |
| | : |
| **KILOLO KIJAKAZI,**[1] | : |
| **Acting Commissioner of Social Security,** | : |
| | : |
| Defendant. | : |

**RICHARD A. LLORET**
**U.S. MAGISTRATE JUDGE**                                        August 11, 2022

## MEMORANDUM OPINION

The Commissioner of Social Security, through the decision of an Administrative Law Judge ("ALJ"), denied Ms. Ubaldini's application for Social Security disability benefits. This appeal followed. The ALJ determined that Ms. Ubaldini was able to do some sedentary work, which Plaintiff claims was error. Plaintiff's Brief ("Pl. Br.") at 1. Doc. No. 16 at 3. I disagree. Because I find that the ALJ did not commit error, I will affirm his decision.

## PROCEDURAL HISTORY

In 2018 Ms. Ubaldini applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act. She claimed her disability began on October 31, 2015, due to left foot metatarsal bone fracture, left foot chronic pain, sclerosis and deformity of the second, third and fourth metatarsals on her

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as Defendant. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

left foot, hallux valgus (commonly referred to as a bunion), left foot diffuse osteopenia and arthritis, subchondral cyst of the head of the first metatarsal of her left foot, complex regional pain syndrome, bulging of the L4-5 and L5-S1 discs, and lower lumbar arthropathy. R. 52, 58-59, 65-66, 131. Her applications were denied at the initial level of administrative review. R. 70, 75. Plaintiff requested a hearing with an ALJ, and the ALJ conducted a hearing on March 14, 2019, at which Ms. Ubaldini was represented by counsel. Both Ms. Ubaldini and a vocational expert testified at the hearing. R. 30-51 (transcript of hearing). The ALJ found that Ms. Ubaldini was not disabled within the meaning of the Social Security Act. R. 12-28. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security. R. 1-5. Ms. Ubaldini filed an appeal in this court. Doc. No. 1. After an order to show cause was entered by Judge Perkin because the plaintiff failed to file a brief (Doc. No. 13), the case was transferred to me (Doc. No. 14). The plaintiff then filed a brief in support of her appeal (Doc. No. 16, pp. 3, 4), the defendant filed a response (Doc. No. 19), and the plaintiff filed a reply. Doc. No. 20.

## FACTUAL BACKGROUND

### A. The Claimant's Background

Ms. Ubaldini was 34 years old on the date of her alleged disability onset, making her a "younger person" under the regulations. R. 23; 20 C.F.R. §§ 404.1563, 416.963(c). She has a college degree and can communicate in English. R. 23, 36. Ms. Ubaldini had past relevant work as a photographer, which qualified as substantial gainful activity, but the ALJ found that her "current sedentary residual functional capacity" leaves her unable to perform her past relevant work. R. 23.

**B. The ALJ's Decision**

The ALJ found that Ms. Ubaldini was not eligible for DBI or SSI because she has not been under a disability, as defined by the Social Security Act. R. 24. In reaching this decision, the ALJ made the following findings of fact and conclusions of law pursuant to Social Security's five-step sequential evaluation process.[2]

At step one, the ALJ concluded that Ms. Ubaldini had not engaged in substantial gainful activity ("SGA") since October 31, 2015, the alleged onset date. R. 17. At step two, the ALJ determined that Ms. Ubaldini had the following severe impairments: complex regional pain syndrome, traumatic arthropathy of the left ankle and hallux valgus. *Id*. The ALJ noted other conditions that do not qualify as "severe." *Id*. At step three, the ALJ compared Ms. Ubaldini's impediments to those contained in the Social Security Listing of Impairments ("listing").[3] The ALJ found that Ms. Ubaldini did not meet any listing criteria, including that of listing 1.02 (major dysfunction of a joint). R. 18. Because there was no specific listing for complex regional pain syndrome, the ALJ considered the effects of the syndrome's signs and symptoms on the musculoskeletal, neurological, and

---

[2] An ALJ evaluates each case using a sequential process until a finding of "disabled" or "not disabled" is reached. The sequence requires an ALJ to assess whether a claimant: (1) is engaging in substantial gainful activity; (2) has a severe "medically determinable" physical or mental impairment or combination of impairments; (3) has an impairment or combination of impairments that meet or equal the criteria listed in the social security regulations and mandate a finding of disability; (4) has the residual functional capacity to perform the requirements of her past relevant work, if any; and (5) is able to perform any other work in the national economy, taking into consideration her residual functional capacity, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

[3] The regulations contain a series of "listings" that describe symptomology related to various impairments. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1. If a claimant's documented symptoms meet or equal one of the impairments, "the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). If not, the sequential evaluation continues to step four, where the ALJ determines whether the impairments assessed at step two preclude the claimant from performing any relevant work the claimant may have performed in the past. *Id*.

3

other body systems, pursuant to SSR 03-2p, and found that the evidence did not meet or medically equal any listing. *Id.*

Prior to undertaking his step four analysis, the ALJ assessed Ms. Ubaldini's residual functional capacity ("RFC"), or "the most [Ms. Ubaldini] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ found that Ms. Ubaldini had the RFC to "perform sedentary work as defined in 20 [C.F.R.] 404.1567(a) and 416.967(a)[,] except [] restricted to simple, routine work." R. 18. At step four, the ALJ found that Ms. Ubaldini does not have the RFC to perform relevant past work. R. 23. At step five, based on the RFC and testimony from a vocational expert, the ALJ determined that Ms. Ubaldini would be able to perform "the requirements of representative occupations such as an inspector . . . a packer . . . and a sorter . . ." R. 24. Because these jobs exist in significant numbers in the national economy, the ALJ concluded that Ms. Ubaldini was "not disabled." *Id.*

## STANDARDS OF REVIEW

My review of the ALJ's decision is deferential. I am bound by his findings of fact to the extent those findings are supported by substantial evidence in the record. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Accordingly, my review of the ALJ's findings of fact is limited to determining whether substantial evidence supports the ALJ's decision. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). If the ALJ's decision is supported by substantial evidence, her disability determination must be upheld. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *see also* 42 U.S.C. § 405(g). "A reviewing court reviews an agency's reasoning to determine whether it is 'arbitrary' or 'capricious,' or, if bound up with a record-based factual conclusion, to

4

determine whether it is supported by 'substantial evidence.'" *Dickinson v. Zurko*, 527 U.S. 150, 164 (1999).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). I must rely on the record developed during the administrative proceedings along with the pleadings in making my determination. *See* 42 U.S.C. § 405(g). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). I must also defer to the ALJ's evaluation of evidence, assessment of the witnesses, and reconciliation of conflicting expert opinions. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009).

The ALJ's legal conclusions and application of legal principles are subject to plenary review. *See Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir. 1995). I must determine whether the ALJ applied the proper legal standards in reaching the decision. *See Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984). Accordingly, I can overturn an ALJ's decision based on an incorrect application of a legal standard even where I find that the decision otherwise is supported by substantial evidence. *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (citing *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983)).

**DISCUSSION**

Ms. Ubaldini claims, without elaboration, that the ALJ's "conclusion is not based on any sound legal reasoning or medical diagnosis." Pl. Br. 1. I find to the contrary that

5

the ALJ's decision thoroughly accounts for the medical and other evidence of record, is soundly reasoned, and is free from legal error.

The ALJ spent four-and-a-half pages reviewing the medical and other evidence of record. R. 19-23. He found that the opinion of Dr. Andrea Woll, based on a consultative examination in April of 2019, a month before the administrative hearing, was "generally well supported by the examination and the medical evidence of record and is persuasive." R. 22. Given the history of treatment and testimony of the claimant, the ALJ concluded that more restrictions than suggested by Dr. Woll were appropriate. R. 23.

Dr. Woll opined that Ms. Ubaldini could continuously lift and carry up to 20 pounds and sit for six hours during an eight-hour workday but could stand and walk for only three hours during a workday. R. 22. The ALJ asked the vocational expert if jobs existed in the national economy for an individual "with a college education,[4] restricted to sedentary work[5] with no more than occasional exposure to dust, dirt, fumes, and other pulmonary irritants. And due to the effects of medication would be restricted to simple, routine tasks." R. 49. The vocational expert testified that there were many thousands of such jobs, citing as examples inspector, packing, and sorting. *Id*. The ALJ relied on this testimony to determine that jobs existed in the national economy for a person with Ms. Ubaldini's RFC. R. 24.

---

[4] Ms. Ubaldini testified she had received a college degree, a B.S. R. 36.
[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567 (DIB); 20 C.F.R. § 416.967 (SSI).

A review of the other medical evidence supports the ALJ's decision. For instance, the ALJ did not find Dr. Chao's 2018 report persuasive. R. 22. That should not be surprising. Dr. Chao, a treating physician, checked a box on a form indicating that the plaintiff was disabled. R. 348-349. The few pages of treatment notes do not explain the doctor's cryptic check mark. R. 327-343. The ALJ noted – correctly – that the decision on disability was his to make, not the doctor's. R. 22. "Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993). By contrast, Dr. Woll's opinion was backed-up by a 5-page narrative report that explained her reasoning and findings in detail. R. 350-355. The ALJ reasonably discounted Dr. Chao's opinion and credited Dr. Woll's.

Similarly, in August of 2018 Dr. Lauren McFadden completed a "check-the-box" form attesting that Ms. Ubaldini was "temporarily disabled – 12 months or more." R. 300. The only explanation provided is a diagnosis of "chronic regional pain syndrome" and "asthma." *Id*. No report or analysis, no treatment notes are attached. To call this even weak evidence, under *Mason*, is to exaggerate its probative value. The ALJ reasonably discounted this opinion. R. 22.

The ALJ's decision is understandable. The plaintiff is a younger woman with foot and ankle problems that prevent her from walking and standing at work for any substantial period of time, and with medication issues that affect her ability to focus. She is well educated. The ALJ took all this into account when formulating the RFC and the hypothetical to the vocational expert. The ALJ reasonably concluded, based on the evidence, that there are sedentary jobs Ms. Ubaldini can still do, and they are plentiful

enough that she is not disabled within the meaning of the Social Security Act. Substantial evidence supported the ALJ's decision.

I will address an argument faintly raised in Plaintiff's briefing. Counsel argues as if the vocational expert testified in response to only one hypothetical, which prevented all full-time work. Pl. Br., at 2; Reply, at 2. The reply goes on to state that "[t]he only logical explanation for the ALJ [sic] decision is that he did not consider his final question posed to the [v]ocational expert, and his decision therefore is devoid of sound legal reasoning." Reply, at 2. This plainly misreads the record.

The vocational expert testified in response to three hypotheticals (R. 49-50) from the ALJ, the second and third of which added additional limitations to the predicate of the first hypothetical (*supra*, at 6). R. 49-50. In answer to the second and third hypotheticals, which are the bases of Plaintiff's argument, the vocational expert testified that there would be no jobs in the national economy. *Id*. It is common, and prudent, for an ALJ to ask more than one hypothetical question of a vocational expert to flesh out the consequences of different RFC findings. An ALJ does not endorse a particular RFC by asking a question. That happens in the ALJ's decision. The issue on appeal is whether the ALJ's decision was based on substantial evidence, not whether another decision – based on the answer to an alternative hypothetical question asked of the vocational expert - would have been supportable. Here the ALJ's decision, based on the RFC and the vocational expert's answer to the first hypothetical (R. 18-23, 24, 49), was supported by substantial evidence.

Finally, Plaintiff's brief and reply do not supply much by way of citation to the record, and no citation at all to the law. The briefing simply asserts that the ALJ committed error. That won't do. *N.J. Dep't of Env't Prot. v. Am. Thermoplastics Corp.*,

8

974 F.3d 486, 492 n.2 (3d Cir. 2020) ("argument … vaguely presented without legal or factual support … is forfeited for lack of development"); *Doeblers' Pennsylvania Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 (3d Cir. 2006) (judges don't "hunt[] for truffles buried in the record") (citations and internal quotations omitted). Notwithstanding the admonition from *Doebler*, I have hunted through the record. Unfortunately for the plaintiff, I found no truffles.

## CONCLUSION

Because I find no error, the decision of the ALJ will be affirmed, and the appeal dismissed. I will enter an Order and Judgment accordingly.

BY THE COURT:

*s/Richard A. Lloret*
**RICHARD A. LLORET**
**U.S. Magistrate Judge**